FENNEMORE CRAIG, P.C.
Joseph A. Chandler (No. 019701)
Nicolas B. Hoskins (No. 023277)
3003 North Central Avenue
Suite 2600
Phoenix, AZ 85012-2913
Telephone: (602) 916-5419
Facsimile: (602) 916-5619
Email: nhoskins@fclaw.com

Attorneys for Receiver R. Craig Hannay of
Hannay Investment Properties, Inc.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>DEER VALLEY MEDICAL CENTER, L.L.C.,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:10-BK-10726-RJH<br><br>**MOTION TO APPROVE POST-PETITION FINANCING**<br><br>Hearing Date: May 3, 2010<br>Hearing Time: 2:30 p.m. |

Hannay Investment Properties, Inc. (the "Receiver" or "HIP"), the state court appointed Receiver, operating and in control of the real estate owned by the Deer Valley Medical Center, L.L.C. (the "Debtor"), respectfully requests that the Court enter an Order pursuant to 11 U.S.C. §364(c) approving its obtaining of post-petition, secured financing from Inland Mortgage Capital Corporation ("Inland"), the senior secured creditor of Debtor in an amount up to $2,500,000.00 pursuant to the terms of the Amendment to Loan Modification Agreement For Debtor-In-Possession Financing (the "Loan Amendment") and an Escrow Agreement set forth in the attached **Exhibits A** and **B**. This Motion is supported by the accompanying Memorandum of Points and Authorities and exhibits thereto.

2310070

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND.

Debtor commenced the above captioned bankruptcy proceeding on April 13, 2010 by filing a voluntary bankruptcy petition.

This case involves certain income producing real property located at 20414 North 27th Avenue, Phoenix, Arizona, which is commonly known as the Deer Valley Medical Center (the "Property"). The Property is a medical center and office facility having approximately 85,000 square feet of space for lease by separate tenants. At this time, it only has two tenants which, collectively, lease approximately 7,400 square feet.

On or about May 9, 2007, Inland and Borrower entered into a Construction Loan Agreement dated as of May 9, 2007 (the "Loan Agreement") pursuant to which Inland loaned the original principal amount of $21,700,000.00 ("Loan"). The Loan is secured by a Deed of Trust (the "Deed of Trust") dated May 9, 2007 in first position on the Property. In addition, the Debtor executed and Inland is the current holder of a separate Assignment of Leases and Rents, dated May 9, 2007 (the "Assignment of Rents").

On or about November 1, 2008, Inland and Debtor executed that certain Loan Modification Agreement and Agreement and Acknowledgment of Guarantor (the "Modification Agreement"), which modified certain terms of the Loan Agreement.

The Loan has matured and is in default. Inland initiated foreclosure proceedings prepetition and a trustee's sale for the Property was scheduled for April 14, 2010. Also, based on a Verified Complaint and Application filed by Inland in the Action, the Superior Court of Arizona appointed Hannay Investment Properties as the Receiver for the Property on March 4, 2010.

At a hearing on April 20, 2010, this Court, based on an agreement with the Debtor placed on the record, granted Inland's *Motion to Excuse the Turnover of Assets by Receiver pursuant to 11 U.S.C. § 543(d)(1)* and excused the Receiver from the turnover
FENNEMORE CRAIG, P.C.
PHOENIX

2310070

requirements of Section 543 of the Code. The Court also determined the Receiver shall have the authority to seek approval for "debtor-in-possession" financing from Inland and execute documents relating to and necessary and appropriate to obtain the additional financing from Inland required by Debtor.

The Property currently is more than 90% vacant. However, the Receiver and Inland have reached an agreement to rent approximately 50% of the remaining space in the Property (the "United Lease") to United HealthCare Services, Inc. ("United HealthCare"). The terms of the United Lease are beneficial to the Bankruptcy Estate and all creditors. However, the United Lease will require the Debtor to reimburse almost $2,200,000.00 to United for tenant improvements to the Property and pay leasing commissions to a broker. Inland is willing to provide the funds necessary for these tenant improvements through additional advances on its existing loan facility to be approved by the Court, however, it will only do so pursuant to the terms of the Loan Amendment.

The key terms of the Loan Amendment area as follows:

(A) Interest at the rate of 10% *per annum*.

(B) The funds may only be used for the following specified purposes (i) paying for tenant improvements (the "TI Money") on the space in the Property expected to be leased by United with all the TI Money to be held by Chicago Title Insurance Company with Nancy Castro, as escrow agent ("Escrow Agent") and disbursed only to United or returned to Inland in strict compliance and in accordance with the terms of the Escrow Agreement") (ii) paying leasing commissions related to the United Lease; and (iii) paying expenses and costs related to operating the Property, including payment of real estate taxes and insurance on the Property, set forth in a budget prepared by the Receiver that are not able to be paid from revenue generated by the Property until the earlier of (a) the date which is six months from the Effective Date; (b) the date of completion of a trustee's sale of the Property under Arizona law; or (c) the date of the entry of an Order removing the Receiver from control of the Property or ruling that the Receiver shall no longer have authority to operate, manage and control the Property.
FENNEMORE CRAIG, P.C.
PHOENIX

2310070

(C) Debtor and Receiver shall not have any rights to any portion of the TI Money.

(D) Escrow Agent will disburse the TI Money to United or Inland according to the terms of the Escrow Agreement.

(E) Any portion of the TI Funds returned to Inland under the terms of the Escrow Agreement shall be credited against and reduce the then outstanding balance of principal, interest, fees and costs owed by Borrower to Inland under the terms of the Loan Documents.

(F) When the Receiver desires to use any portion of the Additional Financing other than the TI Money after the Effective Date, it shall submit a written request signed by its President, Craig Hannay, specifying a dollar amount (the "Draw Amount") and the purpose ("the "Draw Purpose") for which the requested funds are to be used (a "Credit Request").

(G) Inland shall advance additional funds to the Receiver in the Draw Amount within five business days if the stated Draw Purpose is one of the Authorized Purposes, the Receiver continues to have the legal authority to operate, manage and control the Property, the aggregate amount of all prior Draw Amounts plus the current Draw Amount does not exceed $2,500,000.00 and there have been no defaults under the terms of this Amendment and no additional defaults under the terms of the Loan Documents after the date of this Amendment.

(H) The Receiver shall be entitled no further Draw Amounts after the first anniversary of the Effective Date.

(I) The aggregate of all Draw Amounts received by the Receiver (the "Total Draw Amount") shall be due on the date that is one year after the Effective Date (the "Due Date").

The Debtor does not have the funds necessary to pay for the improvements to the space proposed to be occupied by United. The only source for the funds to pay for those improvements is United HealthCare. If the Receiver is not able to borrow the additional funds from Inland to guarantee the reimbursement to United HealthCare for referenced cost of those improvements, United HealthCare will enter into the United Lease and the

bankruptcy estate and all of its creditors will be harmed. Approval of the proposed Loan Amendment will, as a result, benefit the bankruptcy estate and all creditors.

## II. DISCUSSION.

As this Court is aware, Section 364 of the Bankruptcy Code provides, in relevant part, that:

> If the trustee is unable to obtain unsecured credit allowable under Section 503(b)(1) of this title as an administrative expense, the Court, after notice and a hearing, may authorize the paying of credit or the incurring of debt –
>
> (1) with priority over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to the lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. §364(c).

11 U.S.C. section 364(c) allows the Receiver to obtain secured post-petition financing if it cannot obtain financing as an unsecured administrative claim. In addition, the Receiver may obtain post-petition financing secured by an "equal lien" against the Property. 11 U.S.C. §364(d).

In the present case, the Debtor is seeking the authorization to borrow additional funds from Inland through an amendment to the prepetition loan documents. There is a creditor, Aries Real Estate Fund ("Aries"), holding a lien on the Property junior to that of Inland. The existing amount of Inland's prepetition secured claim already exceeds the liquidation value of the assets so there is no equity to support the lien held by Aries and the estate is not losing any equity in its assets on account of this additional secured financing from Inland.

This financing is necessary to fund the Debtor's expenses as described above and allow the bankruptcy estate to realize upon the benefits from the United Lease. No creditor or party in interest will be harmed by approval of the Loan Amendment.

### III. CONCLUSION.

For the foregoing reasons, the Receiver respectfully requests that the Court enter an Order pursuant to 11 U.S.C. §364(c) authorizing the Debtor to obtain secured post-petition financing from Inland on the terms and conditions of the Loan Amendment as they are set forth in **Exhibits A** and **B** attached hereto.

DATED: April 30, 2010

FENNEMORE CRAIG, P.C.

By /s/ *Nicolas B. Hoskins* (No. 023277)
Joseph A. Chandler
Nicolas B. Hoskins
Fennemore Craig, P.C.
3003 North Central Avenue
Suite 2600
Phoenix, Arizona 85012-2913
Telephone: (602) 916-5000
Facsimile: (602) 916-5999

COPY of the foregoing mailed this
30th day of April 2010 to the parties
on the attached service list:

/s/ Heidi Lahren

# DEER VALLEY MEDICAL CENTER, LLC

Aries Real Estate Fund
525 W. Erie Street, Suite 300 S
Chicago, IL 60654

Arivest Management Services
4455 E. Camelback Road, #A205
Phoenix, AZ 85018

Robert Key
4455 E. Camelback Road, #A205
Phoenix, AZ 85018

Summit West Signs
335 E. Baseline Road
Gilbert, AZ 85233

Jerry L. Cochran
Cochran Law Firm, PC
2999 North 44th St., #600
Phoenix, AZ 85018

Professional Plants
2118 South 16th Street
Phoenix, AZ 85034

Signal One Security
6100 S. Maple Avenue
Tempe, AZ 85283

Border Glass
3883 E. Meadowview Court
Gilbert, AZ 85297

Caruso Turley Scott, Inc.
1215 W. Rio Salado Pkwy
Tempe, AZ 85281

Rauch Hermanson & Everroad, Ltd.
14238 N. Northsight Blvd.
Scottsdale, AZ 85260

Cawley Architects
730 North 52nd St.
Phoenix, AZ 85008

G Force Communications
4727 E. Bell Road
Phoenix, AZ 85032

Coyote Glass
1745 W. Deer Valley Road
Phoenix, AZ 85027

Environmental Controls
2802 W. Northern Avenue
Phoenix, AZ 85051

Qwest
P.O. Box 29040
Phoenix, AZ 85038

SimonMed Imaging
20414 North 27th Ave
Phoenix, AZ 85027-3250

Sonora Quest Labs
20414 North 27th Ave
Phoenix, AZ85027-3250

Inland Mortgage Capital Corporation
c/o Christopher R. Kaup, Esq.
Tiffany & Bosco, P.A.
2525 East Camelback Road, Ste 300
Phoenix, AZ 85016-9240

U.S. Trustee
Office of the U.S. Trustee
230 North First Avenue
Suite 204
Phoenix, AZ 85003-1725

Donald W. Powell
Carmichael & Powell, P.C.
7301 N. 16th Street, #103
Phoenix, AZ 85020-5297

2310041